ORIGINAL

FILED
OCT 13 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RICHARD AND SUSAN CARY, PATRICIA GEERTS, SHARON HENRY, JAMES HERZOG, DIANE KNUEFFER, PATRICIA MARTIN, ROBERT S. MARTIN, JANET MARIE PRIATT, DONA SCHNEIDER, DOUGLAS SCHWAEBE, CARL AND KATHERINE SCHWEIKERT, DAVID SOUTHCOTT, and MARY CAROL WILDER, on behalf of themselves and all others similarly situated, who sustained damage to a property interest as a result of the Cedar Fire.

Plaintiffs,

vs.

THE UNITED STATES,

Defendant.

Case No.: 06-707 L

**CLASS ACTION COMPLAINT FOR INVERSE CONDEMNATION**

**COMPLAINT**

Plaintiffs, RICHARD AND SUSAN CARY, PATRICIA GEERTS, SHARON HENRY, JAMES HERZOG, DIANE KNUEFFER, PATRICIA MARTIN, ROBERT S. MARTIN, JANET MARIE PRIATT, DONA SCHNEIDER, DOUGLAS SCHWAEBE, CARL AND KATHERINE SCHWEIKERT, DAVID SOUTHCOTT, and MARY CAROL WILDER, on behalf of themselves and all others similarly situated (hereinafter referred to collectively as "PLAINTIFFS"), by their attorneys, GROTEFELD & DENENBERG, L.L.C., sue Defendant, THE UNITED STATES (hereinafter referred to as the "DEFENDANT"), for the uncompensated taking of PLAINTIFFS' property. As grounds for their complaint, PLAINTIFFS state as follows:

## INTRODUCTION

1. This lawsuit, stemming from the Cedar Fire of October 2003 (hereinafter referred to as the "Cedar Fire"), seeks redress for the PLAINTIFFS' property interests that were taken without just compensation as a result of DEFENDANT'S acts.

## JURISDICTION AND VENUE

2. This court has exclusive jurisdiction over the subject matter of this action, and venue is appropriate pursuant to the Tucker Act, 28 U.S.C. § 1491(a) in concert with the Fifth Amendment to the United States Constitution, which prohibits the DEFENDANT from any "taking" of private property without just compensation.

## PARTIES

3. At all relevant times herein, Plaintiffs Richard and Susan Cary owned real and personal property located at 16725 Harrison Park Trail, Julian, California that was taken without just compensation during the Cedar Fire as a result of DEFENDANT'S acts.

4. At all relevant times herein, Plaintiff Diane Knueffer owned real and personal property located at 30 Twin Oaks Road, Julian, California that was taken without just compensation during the Cedar Fire as a result of DEFENDANT'S acts.

5. At all relevant times herein, Plaintiffs Carl and Katherine Schweikert owned real and personal property located at 16952 Iron Springs Road, Julian, California that was taken without just compensation during the Cedar Fire as a result of DEFENDANT'S acts.

6. At all relevant times herein, Plaintiff David Southcott owned real and personal property located at 17264 Iron Springs Road, Julian, California that was taken without just compensation during the Cedar Fire as a result of DEFENDANT'S acts.

7. At all relevant times herein, Plaintiff James Herzog owned real and personal property located at 30 Twin Oaks Road, Julian, California that was taken without just compensation during the Cedar Fire as a result of DEFENDANT'S acts.

8. At all relevant times herein, Plaintiff Patricia Geerts owned real and personal property located at 14805 Mussey Grade Road, Ramona, California that was taken without just compensation during the Cedar Fire as a result of DEFENDANT'S acts.

9. At all relevant times herein, Plaintiff Janet Marie Priaatt owned real and personal property located at 13835 Fernbrook Drive, Ramona, California that was taken without just compensation during the Cedar Fire as a result of DEFENDANT'S acts.

10. At all relevant times herein, Plaintiff Sharon Henry owned real and personal property located at 1383 Fernbrook Drive, Ramona, California that was taken without just compensation during the Cedar Fire as a result of DEFENDANT'S acts.

11. At all relevant times herein, Plaintiff Dona Schneider owned real and personal property located at 14062 Fernbrook Drive, Ramona, California that was taken without just compensation during the Cedar Fire as a result of DEFENDANT'S acts.

12. At all relevant times herein, Plaintiff Mary Carol Wilder owned real and personal property located at 14110 Fernbrook Drive, Ramona, California that was taken without just compensation during the Cedar Fire as a result of DEFENDANT'S acts.

13. At all relevant times herein, Plaintiff Douglas Schwaebe owned real and personal property located at 13150 Genesis Way, Lakeside, California that was taken without just compensation during the Cedar Fire as a result of DEFENDANT'S acts.

14. At all relevant times herein, Plaintiff Robert S. Martin owned real and personal property located at Assessors Parcel Numbers: 1) 294-160-22-00; 2) 294-160-26-00; 3) 293-180-30-00; 4) 293-180-34-00; 5) 293-180-58-00; 6) 293-180-59-00; 7) 293-180-60-00; 8) 293-180-63-00; and 9) 293-180-64-00, North Peak, Cuyamaca, Julian, California that was taken without just compensation during the Cedar Fire as a result of DEFENDANT'S acts.

15. At all relevant times herein, Plaintiff Patricia Martin owned real and personal property located at Assessors Parcel Number: 294-160-23-00, North Peak, Cuyamaca, Julian, California that was taken without just compensation during the Cedar Fire as a result of DEFENDANT'S acts.

16. At all relevant times and as though fully set forth herein, other persons similarly situated owned real and/or personal property at locations described in Exhibit "A" to this Complaint that was taken without just compensation during the Cedar Fire as a result of DEFENDANT'S acts.

17. PLAINTIFFS are informed and believe that at all pertinent times herein, DEFENDANT, d/b/a/ the United States Department of Agriculture ("USDA"), the USDA Forest Service, and/or other federal governmental entities duly organized and existing under and by virtue of the laws of the United States, owned and was in control of the public land commonly known as the Cleveland National Forest.

## FACTUAL BACKGROUND

18. The Cleveland National Forest (hereinafter referred to as the "CNF") consists of 460,000 acres of varying terrain and is the southernmost National Forest in the State of California. It is located just north of Mexico and east of the City of San Diego.

19. On and well before October 25, 2003, extreme fire hazard conditions existed within the CNF as a direct result of DEFENDANT'S land management policies for the CNF, DEFENDANT'S public access policies regarding the CNF, and other known precipitating factors including, but not limited to, dried vegetation, low humidity, high temperatures, predicted high winds and other seasonal weather conditions in Southern California.

20. On October 25, 2003 a group of public citizens was granted access to remote areas of the CNF by DEFENDANT to hunt deer. One of these hunters started a small signal fire in the CNF when he became separated from the group. The small signal fire, then confined to the CNF, was observed by citizens and reported to governmental agencies, including the DEFENDANT, during the afternoon of October 25, 2003.

21. Over the course of the next five (5) days, what was a small signal fire spread from the CNF to surrounding properties and became the largest fire in California history. The Cedar Fire burned more than 273,000 acres, 2,232 residences, 22 commercial structures, 566 outbuildings and took the lives of fourteen (14) civilians and one (1) firefighter.

22. Local, State and Federal governmental agencies have determined that as a result of the Cedar Fire, the monetary losses suffered by property owners in the County of San Diego, including the property noted in Exhibit "A" to this Complaint, exceeded Two Hundred Million Dollars ($200,000,000.00).

## CLASS ALLEGATIONS

23. This action is brought in accordance with Rule 23 of the Rules of the Court of Federal Claims.

24. The class consists of persons who owned property located in and around the County of San Diego whose real and/or personal property was damaged and/or destroyed during the Cedar Fire that occurred on or about October 25, 2003 (hereinafter referred to as the "CLASS").

25. The CLASS is so numerous that joinder of all members individually is impracticable. Attached to this Complaint as Exhibit "A" and incorporated as though fully set forth herein is a list of addresses showing properties where the County of San Diego has found damage and/or destruction of a property occurred as a direct result of the Cedar Fire. Though Plaintiffs are informed and believe that the CLASS includes thousands of persons, as the Cedar Fire affected over 2,000 residences, the CLASS is nonetheless manageable as there is a record of damaged and destroyed properties.

26. The questions of law and fact at issue in this controversy are common to the CLASS. The same decisions and calculated risks taken by DEFENDANT affected and are common to the CLASS. Decades of land management policies employed by DEFENDANT in the CNF as well as guidelines utilized by DEFENDANT in the CNF to facilitate public recreational use of the CNF during times of heightened fire danger carried the risk that neighboring private property would be "taken," and ultimately these failed policies led to the damage and destruction of the property interests of all potential CLASS members.

27. DEFENDANT treated the entire CLASS similarly with respect to its land management and public access policies within the CNF.

28. The questions of law and fact common to the CLASS predominate over questions of law and fact which affect only individual members of the CLASS. The common core of salient facts (the acts and/or omissions of DEFENDANT alleged herein) applies to the injuries sustained by all individual members of the CLASS. The individual claims will differ only in the amount of damages and the nature of the property interest impaired. If beneficial or necessary for judicial economy, subclasses may be formulated reflecting the specific types of damages suffered by CLASS members.

29. The claims of the named PLAINTIFFS are typical of the claims of the CLASS. All claims, whether by named PLAINTIFFS or members of the CLASS, stem from injury to property interests as a result of the same acts and/or omissions of DEFENDANT. Although some individuals comprising the claimant CLASS will not have sustained one or several of the types of damages suffered by the named PLAINTIFFS (for example renters will not have suffered damage to land), the converse is not true.

30. Many members of the CLASS who did not sustain extensive property damage (i.e., renters) would most likely not pursue a claim if a class action were not available due to the burden and expense of litigation.

31. The named PLAINTIFFS are able fairly and adequately able to protect the interests of all members of the CLASS, since the named PLAINTIFFS have interests in this action which are coincident with and not adverse to the CLASS they represent, and since the named PLAINTIFFS individually have a substantial financial interest in this action. The named PLAINTIFFS are also members of the CLASS.

32. The named PLAINTIFFS have employed attorneys experienced and competent in representing numerous plaintiffs in the prosecution of complex property damage claims, including large wildfire related litigation.

33. On balance, a class action is superior to other methods available for adjudicating the controversy. By maintaining this action as a class action, individual CLASS members who have claims which might not otherwise warrant individual actions are provided with an accessible

forum for redress of their claims, and the possibility of repetitious litigation will be eliminated. Individual litigation of the claims of all CLASS members is impracticable. By contrast, conducting this action as a class action with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system, prevents inconsistent results, and protects the rights of each CLASS member.

## CLAIM FOR INVERSE CONDEMNATION

34. PLAINTIFFS hereby incorporate by reference, as though fully set forth herein, paragraphs 1 to 33.

35. Upon information and belief, at all relevant times DEFENDANT was responsible for and in fact controlled forest and vegetation management within the CNF.

36. Upon information and belief, at all relevant times DEFENDANT was responsible for fire modeling within the CNF.

37. Upon information and belief, at all relevant times DEFENDANT was responsible for emergency response planning within the CNF.

38. Upon information and belief, at all relevant times DEFENDANT was responsible for general fire abatement and suppression activities within the CNF.

39. Upon information and belief, it was DEFENDANT'S land management policy from 1911 to 1968 to suppress each and every wildfire in National Parklands, including the CNF, so as to preserve all timber and watersheds, as well as to conserve National Parkland wildlife for public use and enjoyment.

40. Upon information and belief, while DEFENDANT'S land management policy with respect to wildfire suppression in the CNF changed in 1968 to the extent that it no longer explicitly mandated the suppression of all wildfires, DEFENDANT'S fire suppression policies in the CNF remain focused on preserving natural resources for the public's use, whether based on safeguarding a watershed, protecting timber, or permitting public recreational access to the CNF.

41. Upon information and belief, the land management policies implemented by DEFENDANT over the greater portion of the 20th Century, and continuing to the present day, resulted in the development of unnaturally dense stands of trees and other highly flammable fuel loads in the CNF.

42. At all relevant times, DEFENDANT was or should have been aware that its land management policies as they related to fire suppression and prevention for the CNF created a significant risk that a wildfire originating in the CNF and fueled by the buildup of highly flammable vegetation in the CNF would spread to adjacent landowners' properties.

43. Upon information and belief, at all relevant times herein DEFENDANT was responsible for granting the general public's use of and access to the CNF.

44. Upon information and belief, over the latter half of the 20th Century, and continuing to the present day, DEFENDANT'S land management policies not only permitted, but encouraged the CNF to be increasingly used by the public for various recreational purposes, including hunting.

45. Upon information and belief, at all relevant times herein one of the DEFENDANT'S land management policies was to permit public recreational access to and use of the CNF for hunting purposes during heightened fire hazard conditions, despite the known risk of a fire being started by a hunter or other like recreational user in the CNF, and despite the known risk that any such fire caused by a hunter or other public user in the CNF would likely lead to a wildfire spreading to neighboring privately owned properties.

46. On or about October 25, 2003, DEFENDANT, in granting hunters and other like public recreational users access to the CNF, took the calculated risk that if any hunter or other like recreational user started a fire that privately owned property situated adjacent to the CNF would be damaged and/or destroyed by the spread of wildfire from the CNF to those properties.

47. DEFENDANT made the deliberate decision to continue its land management policies, including its public access practices, in furtherance of the public's interest in spite of the known attendant risk of a wildfire spreading from the CNF to privately owned property.

48. DEFENDANT, acting in the public interest, took the known calculated risk that its land management policies in the CNF would result in a "taking" of adjacent landowners' property in the event of a fire originating in the CNF and spreading beyond the CNF's boundaries.

49. The risks attendant to DEFENDANT'S land management policies for the CNF materialized on or about October 25, 2003 when during a known period of extreme fire hazard conditions, the signal fire started in the CNF by the separated hunter spread to neighboring privately owned lands, directly resulting in the "taking" of PLAINTIFFS' property, without just compensation.

50. The PLAINTIFFS, whose property was "taken" by DEFENDANT, should not be required to shoulder alone the devastating effects of DEFENDANT'S land management policies. Rather, that burden should be borne by the DEFENDANT itself.

WHEREFORE, PLAINTIFFS respectfully request this Honorable Court to certify this action as a class action and enter a judgment against Defendant, THE UNITED STATES, in an amount no less than Two Hundred Thirty Six Million, Eight Hundred Ninety Thousand, Six Hundred Forty Eight dollars ($236,890,648.00) as just compensation for the Fifth Amendment "taking" of PLAINTIFFS' property, plus interest, costs, and attorneys fees pursuant to 28 U.S.C. §2412 and as otherwise accorded by law.

Dated this 12th day of October, 2006

Respectfully submitted,

Mark S. Grotefeld
GROTEFELD & DENENBERG, L.L.C.
105 West Adams Street, Suite 2300
Chicago, Illinois 60603
Telephone: (312) 601-2398
Facsimile: (312) 601-2402

Counsel for Plaintiffs.

SF#13344