IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Filed Electronically April 20, 2007)

| | | |
|---|---|---|
| RICHARD AND SUSAN CARY, PATRICIA GEERTS, SHARON HENRY, JAMES HERZOG, DIANE KNUEFFER, PATRICIA MARTIN, ROBERT S. MARTIN, JANET MARIE PRIATT, DONA SCHNEIDER, DOUGLAS SCHWAEBE, CARL AND KATHERINE SCHWEIKERT, DAVID SOUTHCOTT, and MARY CAROL WILDER, on behalf of themselves and all others similarly situated, who sustained damage to a property interest as a result of the Cedar Fire. | ) | No. 06-707 L |
| Plaintiffs, | ) | Senior Judge Wiese |
| v. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

HEIDE L. HERRMANN
Environment and Natural Resources Division
Natural Resources Section
Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
202-305-3315 (phone)
202-305-0274 (fax)
Heide.Herrmann@usdoj.gov

Dated: April 20, 2007

## TABLE OF CONTENTS

I. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A. Standard of Review Under RCFC 12 ( c), 12(b)(6) and 12(b)(1) . . . . . . . . . . . . . 3

1. Failure to State a Claim Pursuant to RCFC 12( c) and 12(b)(6) . . . . . . . . 3

2. Lack of Jurisdiction Pursuant to RCFC 12 ( c) and 12(b)(1) . . . . . . . . . . 4

B. Plaintiffs Fail To State An Inverse Condemnation Claim Arising From The Forest Service's Land Management and Public Access Policies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

C. This Court Lacks Jurisdiction to Hear This Claim Because This Is, At Most, a Tort Claim, Not a Takings Claim . . . . . . . . . . . . . . . . . . . . . . . . . 9

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

### CASES

Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998) . . . . . . . . . . 4

Bagwell v. United States,
21 Cl. Ct. 722 (1990) . . . . . . . . . . 3, 9, 11

Berenholz v. United States,
1 Cl. Ct. 620 (1982), aff'd, 723 F.2d 68 (Fed. Cir. 1983) . . . . . . . . . . 10, 11

Bettini v. United States,
4 Cl. Ct. 755 (1984) . . . . . . . . . . 10

Boling v. United States,
41 Fed. Cl. 674 (1998), vacated by, 220 F.3d 1365 (Fed. Cir. 2000) . . . . . . . . . . 10

Bond v. United States,
47 Fed. Cl. 641 (2000) . . . . . . . . . . 4

Briscoe v. LaHue,
663 F.2d 713 (7th Cir. 1981), aff'd, 460 U.S. 325 (1983) . . . . . . . . . . 4

Brown v. United States,
105 F.3d 621 (Fed. Cir. 1997) . . . . . . . . . . 9

Burt v. Makita USA, Inc.,
212 F.Supp.2d 893 (N.D. Ind. 2002) . . . . . . . . . . 6

Cedars-Sinai Med. Ctr. v. Watkins,
11 F.3d 1573 (Fed. Cir. 1993) . . . . . . . . . . 5

Cleveland v. Caplaw Enterprises,
448 F.3d 518 (2nd Cir. 2006) . . . . . . . . . . 3

Columbia Basin Orchard v. United States,
132 Ct. Cl. 445, 132 F.Supp. 707 (1955) . . . . . . . . . . 11

Eastport Steamship Corp. v. United States,
178 Ct. Cl. 599, 372 F.2d 1002 (1967) . . . . . . . . . . 9

Fanning, Phillips, Molnar v. West,
160 F.3d 717 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Ferreiro v. United States,
350 F.3d 1318 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Figuera v. United States,
57 Fed. Cl. 488 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Grajales-Romero v. American Airlines, Inc.,
194 F.3d 288 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Holland v. United States,
59 Fed. Cl. 735 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Huntleigh USA Corp. v. United States,
63 Fed. Cl. 440 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Kemp v. United States,
65 Fed.Cl. 818 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Lombardo v. State Farm Mut. Auto. Ins. Co.,
800 F. Supp. 208 (E.D. Pa. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

McNutt v. General Motors Acceptance Corp.,
298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Moden v. United States,
404 F.3d 1335 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

N.Y. Life Ins. Co. v. United States,
190 F.3d 1372 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Napier v. F/V Deesie, Inc.,
454 F.3d 61 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Nat'l By-Product, Inc. v. United States,
186 Ct. Cl. 546 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Owen Equip. & Erection Co. v. Kroger,
437 U.S. 365 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Pixton v. B & B Plastics, Inc.,
291 F.3d 1324 (Fed. Cir. 1998) . . . . . . . . . . 5

Quality Tooling, Inc. v. United States,
47 F.3d 1569 (Fed. Cir. 1995) . . . . . . . . . . 10

R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs,
Local Union 150, AFLCIO,
335 F.3d 643 (7th Cir. 2003) . . . . . . . . . . 3

Reynolds v. Army & Air Force Exchange Serv.,
846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . 5

RHI Holdings, Inc. v. United States,
142 F.3d 1459 (Fed. Cir. 1998)(same) . . . . . . . . . . 10

Rose v. Rose,
481 U.S. 619 (1987) . . . . . . . . . . 10

Saudi Arabia v. Nelson,
507 U.S. 349 (1993) . . . . . . . . . . 10

Sheuer v. Rhodes,
416 U.S. 232 (1974) . . . . . . . . . . 5

Sommers Oil Co. v. United States,
241 F.3d 1375 (Fed. Cir. 2001) . . . . . . . . . . 4

Sun Oil Co. v. United States,
215 Ct. Cl 716, 572 F.2d 786 (1978) . . . . . . . . . . 11

Teegarden v. United States,
42 Fed. Cl. 252 (1998) . . . . . . . . . . 6, 7, 11, 12

Thune v. United States,
41 Fed. Cl. 49 (1998) . . . . . . . . . . 7, 8, 11, 12

United States v. Causby,
328 U.S. 256 (1946) . . . . . . . . . . 11

United States v. Cress,
243 U.S. 316 (1917) . . . . . . . . . . 11

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . 10

United States v. Testan,
424 U.S. 392, 96 S.Ct. 948 (1976) . . . . . . . . . . 10

Vansant v. United States,
75 Ct. Cl. 562 (1932) . . . . . . . . . . 11

**STATUTES**

28 U.S.C. § 1346(b)(1) . . . . . . . . . . 3
28 U.S.C. § 1491 . . . . . . . . . . 9
28 U.S.C. § 1491(a)(1) . . . . . . . . . . 9

**RULES**

RCFC 12(c) . . . . . . . . . . 3, 4

**OTHER AUTHORITIES**

5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure,
§ 1367 (1990) . . . . . . . . . . 4

Black's Law Dictionary 234 (8th Ed. 2004) . . . . . . . . . . 6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Filed Electronically April 20, 2007)

| | | |
|---|---|---|
| RICHARD AND SUSAN CARY, PATRICIA GEERTS, SHARON HENRY, JAMES HERZOG, DIANE KNUEFFER, PATRICIA MARTIN, ROBERT S. MARTIN, JANET MARIE PRIATT, DONA SCHNEIDER, DOUGLAS SCHWAEBE, CARL AND KATHERINE SCHWEIKERT, DAVID SOUTHCOTT, and MARY CAROL WILDER, on behalf of themselves and all others similarly situated, who sustained damage to a property interest as a result of the Cedar Fire. | ) | No. 06-707 L |
| Plaintiffs, | ) | Senior Judge Wiese |
| v. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Pursuant to Rules 12(c), 12(b)(6) and 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), and this Court's order dated March 27, 2007, Defendant, United States of America, hereby moves for judgment on the pleadings and respectfully requests that the Court dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted, or in the alternative, for lack of jurisdiction. Specifically, Plaintiffs fail to state a Fifth Amendment takings claim against the United States. Further, to the extent Plaintiffs have stated a claim, their claim sounds in tort, and falls outside the purview of this Court's jurisdiction. Accordingly, the Complaint should be dismissed in its entirety.

## I. STATEMENT OF FACTS

Plaintiffs' claim stems from a fire which took place in the Cleveland National Forest ("CNF") in Southern California on October 25, 2003, and which came to be known as the Cedar Fire.[1/] The parties agree that the Cedar Fire was started by a hunter who had become separated from his party and set the fire in an attempt to signal for help. Complaint at ¶20. The fire started by the hunter eventually spread from the CNF to the surrounding area, damaging property and taking the lives of several individuals. Id. at ¶21.

According to Plaintiffs' complaint, extreme fire hazard conditions existed within the CNF on and before the Cedar Fire was set. Complaint at ¶19. Plaintiffs allege that one of the reasons for these conditions was Defendant's land management policy, from 1911 through 1968, of suppressing all wildfires in the CNF. Id. at ¶¶39-41. Plaintiffs further allege that one of the reasons for the extreme fire hazard conditions was Defendant's policy of permitting, and encouraging, the public to use the CNF for recreational purposes. Id. at ¶¶43-46. In addition to Defendant's land management and public access policies, Plaintiffs cite at least five additional reasons for the extreme fire hazard conditions: (1) the existence of dried vegetation; (2) low humidity; (3) high temperatures; (4) predicted high winds; and (5) other seasonal weather conditions in Southern California. Id. at ¶19.

Plaintiffs are individuals who own property that was damaged in the Cedar Fire. Complaint at ¶¶3-16. On October 13, 2006, Plaintiffs filed suit in this Court, alleging a taking of their property without just compensation, pursuant to the Fifth Amendment to the United States

---

[1/] For the purposes of our motion for judgment on the pleadings only, the factual allegations presented in the Complaint are assumed to be true.

Constitution. On October 20, 2006, Plaintiffs filed suit in the United States District Court for the Southern District of California, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §1346(b)(1), alleging the same operative facts, and seeking relief pursuant to a tort theory. The district court litigation remains pending.

## II. ARGUMENT

### A. Standard of Review Under RCFC 12(c), 12(b)(6) and 12(b)(1)

Rule 12(c) provides that "[a]fter the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings." RCFC 12(c). Defendant filed its answer to Plaintiff's Complaint on January 10, 2007, and this case has not yet been scheduled for trial.

#### 1. Failure To State a Claim Pursuant to RCFC 12(c) and 12(b)(6)

The standard for deciding a Rule 12(c) motion is the same as for motions to dismiss under Rule 12(b)(6) for failure to state a claim. See Cleveland v. Caplaw Enterprises, 448 F.3d 518, 521 (2nd Cir. 2006); R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO, 335 F.3d 643, 647 (7th Cir. 2003). "The Court of Federal Claims may grant a motion to dismiss for failure to state a claim upon which relief may be granted where the plaintiff can prove no set of facts that would support its claim." N.Y. Life Ins. Co. v. United States, 190 F.3d 1372, 1377-78 (Fed. Cir. 1999); see also Kemp v. United States, 65 Fed.Cl. 818, 821 (2005) (citing Bagwell v. United States, 21 Cl. Ct. 722, 725 (1990)). Dismissal is proper under Rule 12(b)(6) when "the facts as alleged in the complaint do not entitle the plaintiff to a legal remedy." Holland v. United States, 59 Fed. Cl. 735, 738 (2004) (citing N.Y. Life Ins. Co., 190 F.3d at 1377).

When reviewing a motion to dismiss under Rule 12(b)(6), the court "must accept as true all the factual allegations in the complaint, and [the court] must indulge all reasonable inferences in favor of the non-movant." Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted); see also Huntleigh USA Corp. v. United States, 63 Fed. Cl. 440, 443 (2005) ("When considering a motion to dismiss a claim under RCFC 12(b)(6), a court must accept as true all well-pled factual allegations and draw all reasonable inferences in plaintiff's favor.") (citations omitted).

**2. Lack of Jurisdiction Pursuant to RCFC 12(c) and 12(b)(1)**

The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)). "[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." Bond v. United States, 47 Fed. Cl. 641, 647 (2000) (quoting Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981), aff'd, 460 U.S. 325 (1983)). Subject matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*. Fanning, Phillips, Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998).

In considering a Rule 12(c) motion to dismiss challenging subject matter jurisdiction, the Court should apply the same standard of review as it would under Rule 12(b)(1). Lombardo v. State Farm Mut. Auto. Ins. Co., 800 F. Supp. 208, 211 (E.D. Pa. 1992) (citing 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 1367, p. 515 (1990)). In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true the complaint's undisputed factual allegations and construe the facts in the light most favorable to

the plaintiff. Figuera v. United States, 57 Fed. Cl. 488, 492 (2003) (citing Sheuer v. Rhodes, 416 U.S. 232, 236 (1974)); Pixton v. B & B Plastics, Inc., 291 F.3d 1324, 1326 (Fed. Cir. 1998). However, if a motion to dismiss challenges the truth of jurisdictional facts alleged in the complaint, the allegations in the complaint are not controlling, and the court may consider relevant evidence in order to resolve the factual dispute. Ferreiro v. United States, 350 F.3d 1318, 1324 (Fed. Cir. 2003) ("A trial court may weigh relevant evidence when it considers a motion to dismiss that challenges the truth of jurisdictional facts alleged in a complaint."); Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1584 (Fed. Cir. 1993); Reynolds v. Army & Air Force Exchange Serv., 846 F.2d 746, 747 (Fed. Cir. 1988).

**B. Plaintiffs Fail To State An Inverse Condemnation Claim Arising From The Forest Service's Land Management and Public Access Policies**

"An inverse-condemnation plaintiff first must show that treatment under takings law is appropriate." Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir. 2005). The United States Court of Appeals for the Federal Circuit has set forth a two-part test for determining whether such treatment is warranted. First, a plaintiff must demonstrate "either that the government intended to invade a protected property interest or that the asserted invasion is the direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the activity." Id. Second, a plaintiff must demonstrate "that the invasion appropriated a benefit to the government at the expense of the property owner, at least by preempting the property owner's right to enjoy its property for an extended period of time, rather than merely by inflicting an injury that reduces the property's value." Id.

In order to satisfy the first prong of the two-part inquiry, Plaintiffs must not only show that their injuries were in fact caused by Defendant's action, but also, that the Defendant "should

have predicted or foreseen the resulting injury." Moden, 404 F.3d at 1343. The injury suffered by the Plaintiffs "may not be foreseeable if an intervening cause breaks the chain of causation." Id. at 1344.

An intervening cause is "[a]n event that comes between the initial event in a sequence and the end result . . .." Black's Law Dictionary 234 (8th Ed. 2004). Generally, an intervening cause must be unforeseeable in order to cut off a defendant's potential liability. See, e.g., Napier v. F/V Deesie, Inc., 454 F.3d 61 (1st Cir. 2006); Grajales-Romero v. American Airlines, Inc., 194 F.3d 288 (1st Cir. 1999); Burt v. Makita USA, Inc., 212 F.Supp.2d 893 (N.D. Ind. 2002). In this case, a lost hunter starting an illegal fire that ultimately spread to Plaintiffs' property is the intervening cause that breaks the chain of causation.

The Court of Federal Claims addressed a similar situation in Teegarden v. United States, 42 Fed. Cl. 252 (1998). In that case, plaintiffs were property owners who suffered damage as a result of a forest fire. Id. at 254. Plaintiffs based their takings claim on the Forest Service's decision to concentrate its fire suppression efforts in an area deemed of higher priority than plaintiffs' property. Id. The court rejected the claim, finding that, "plaintiffs cannot escape the incontrovertible fact that the Uinta Flat Fire, not the Forest Service, caused the destruction of plaintiffs' property." Id. at 257. The court emphasized that a random event, such as a forest fire, cannot rise to the level of a taking even where damage to plaintiffs' property is partially attributable to Government activity. Id. Just as in Teegarden, Plaintiffs here "cannot escape" the fact that the Cedar Fire, started illegally by a lost hunter, caused the destruction of their property. Id. Just as in Teegarden, "no facts suggest that the Forest Service had anything to do with the outbreak of the fire . . ." Id. at 257 n.5.

In Thune v. United States, 41 Fed. Cl. 49 (1998), the court came to exactly the same conclusion in the case of a "controlled burn," where the Forest Service deliberately ignited the fire that ultimately escaped and spread to the plaintiff's property. There, a landowner sued the government after his hunting camp was destroyed by a fire that had been intentionally set by the Forest Service as part of its efforts to reduce sagebrush and increase herbaceous forage production. When wind conditions unexpectedly changed, causing the fire to spread beyond the planned burn area, the landowner's camp was damaged. The plaintiff contended that the government had taken his property by intentionally setting the fire. Even where the Forest Service, as opposed to a lost hunter, started the fire, the court noted that the plaintiff's property was not within the intended burn area, "indicating that its destruction was not a natural consequence of the Dry Cottonwood fire as designed." Id. at 52. Even if the plaintiff's allegations of negligence were true, plaintiff could not show that the Government had intended to take his property, or do an act the natural consequence of which was to take his property. Id.

Here, Plaintiffs argue that the Forest Service's land management policy, and its policies regarding use of public land, contributed to the cause of the Cedar Fire. Even if this were true, Plaintiffs do not, and cannot, argue that the policies in question were designed to ignite a fire that would damage Plaintiffs' property. Indeed, the land management policy about which Plaintiffs complain was a policy of attempting to extinguish all forest fires. Such a policy is specifically designed to avoid damage to person and property. Any damage caused by the Cedar Fire, even if it were partially attributable to an earlier policy of extinguishing fires, could not be seen as "a natural consequence of [the Forest Service's policy] as designed." Thune, 41 Fed. Cl. at 52.

Plaintiffs have expressed a belief that their case is distinguishable from Thune and Teegarden because it is a "fire prevention" case, whereas Thune and Teegarden are "fire protection" cases.[2] We are unable to discern, however, how such a distinction, even if valid, changes the legal analysis. In addition, from a factual standpoint, the differences between the cases hurt, rather than help, Plaintiffs' argument.

In Thune, the defendant actually started the fire that destroyed the plaintiff's property. Even then, after a finding that the plaintiff's property loss was partially attributable to an authorized government project, the court still found that there was an intervening cause between the defendant's igniting what was intended to be a controlled burn, and the plaintiff's property being damaged. Thune, 41 Fed. Cl. at 54. Here, Defendant did not start the fire. It is undisputed that a lost hunter foolishly started the fire that eventually spread to Plaintiffs' property. The hunter's action, not the Defendant's, caused the Cedar Fire. There is no way for Plaintiffs to prove that, but for the Forest Service's policy of extinguishing forest fires from 1911 through 1968, the hunter would not have gotten lost, would not have illegally started a fire, and his fire would not have spread throughout the Cleveland National Forest, and onto Plaintiffs' property.

Moreover, while Plaintiffs allege that the Forest Service's policies contributed to the spread of the fire, they concede that there were other contributing factors as well. In addition to the Forest Service's land management and public access policies, the Plaintiffs themselves point to the existence of dried vegetation, low humidity, high temperatures, high winds, and other seasonal weather conditions in Southern California, all of which were "precipitating factors."

---

[2] See Transcript of March 27, 2007 Preliminary Status Conference, at p.12-13.

Complaint at ¶19. By their own pleading, Plaintiffs establish the multiple intervening events that break the causal chain.

Defendant could not have foreseen, as a "direct, natural, and probable consequence" of its decisions to suppress forest fires and to permit public use of public lands, that on an extremely hot day in Southern California, with low humidity and high winds, a lost hunter would take the inadvisable, and illegal, step of setting a signal fire. Therefore, Plaintiffs have failed to state a claim for inverse condemnation, and their complaint should be dismissed in its entirety.

**C. This Court Lacks Jurisdiction To Hear This Claim Because This Is, At Most, a Tort Claim, Not a Takings Claim**

"The Court of Federal Claims is a court of limited jurisdiction." Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997). Plaintiffs assert a takings claim, and allege that jurisdiction exists pursuant to the Tucker Act, 28 U.S.C. § 1491. By its express terms, the Tucker Act confers jurisdiction over money claims against the United States "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (emphasis added); see also Eastport Steamship Corp. v. United States, 178 Ct. Cl. 599, 372 F.2d 1002 (1967). Accordingly, while "a suit for a federal taking lies properly within the jurisdiction of the United States Claims Court, the court has no jurisdiction to entertain tort claims and would have to dismiss such a suit." Bagwell v. United States, 21 Cl. Ct. 722, 726 (1990).

The distinction between a tort and a taking is of great importance because of the connection between jurisdiction and the doctrine of sovereign immunity: "[i]t long has been established that the United States, as sovereign, 'is immune from suit save as it consents to be

sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain that suit.'" United States v. Testan, 424 U.S. 392, 399, 96 S.Ct. 948, 953 (1976) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)). Accordingly, waivers of sovereign immunity are to be strictly construed. See Rose v. Rose, 481 U.S. 619, 635 (1987); Quality Tooling, Inc. v. United States, 47 F.3d 1569, 1574 (Fed. Cir. 1995). "The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978); see also RHI Holdings, Inc. v. United States, 142 F.3d 1459, 1461 (Fed. Cir. 1998) (same).

Because of sovereign immunity, the distinction between a tort claim and a taking claim is more than a matter of semantics. If a claim is a tort, a plaintiff may not simply recast that claim as a taking. As the Supreme Court has opined in another context, such recharacterizations are "semantic ploys" and to give them jurisdictional significance would effectively thwart the law. Saudi Arabia v. Nelson, 507 U.S. 349, 363 (1993).

As a general matter, the difference between a tort claim and a taking claim turns on the nature of the invasion and the resulting nature of plaintiff's alleged injury. See, e.g., Bettini v. United States, 4 Cl. Ct. 755, 758 (1984); Berenholz v. United States, 1 Cl. Ct. 620, 626 (1982), aff'd, 723 F.2d 68 (Fed. Cir. 1983); Nat'l By-Product, Inc. v. United States, 186 Ct. Cl. 546, 577 (1969); Boling v. United States, 41 Fed. Cl. 674, 679 (1998), vacated by 220 F.3d 1365 (Fed. Cir. 2000) (on statute of limitations grounds). In considering the differences between tort claims and takings claims, "[i]t is the character of the invasion, not the amount of damage resulting from it, so long as the damage is substantial, that determines the question whether it is a taking."

United States v. Cress, 243 U.S. 316, 328 (1917) ; see also United States v. Causby, 328 U.S. 256, 266 (1946).

In order to prevail on a takings claim, a claimant must demonstrate that the government intended to take the owner's property and that the government action was authorized. See, e.g., Teegarden, 42 Fed. Cl. at 256; Thune, 41 Fed. Cl. at 52 (1998); Columbia Basin Orchard v. United States, 132 Ct. Cl. 445, 450, 132 F.Supp. 707, 709 (1955). Consequently, "[a]n accidental or negligent impairment of the value of private property is not a taking, but, at most, a tort." Teegarden, 42 Fed. Cl. at 256.

The Court of Federal Claims has identified the government's intent to take the action that causes a taking of the property as the defining difference between a takings claim and a tort claim. See, e.g., Thune, 41 Fed. Cl. at 52 (stating that "the probability and foreseeability of the damage is a primary determinative element in whether a taking or a tort occurred") (emphasis added); Bagwell, 21 Cl. Ct. at 725-26; Berenholz, 1 Cl. Ct. 627 ("[t]he key element which distinguishes a taking from an incidental injury is the presence on the part of the Government of an intent to appropriate") (emphasis added) (quoting Sun Oil Co. v. United States, 215 Ct. Cl. 716, 770, 572 F.2d 786, 818); Vansant v. United States, 75 Ct. Cl. 562, 564 (1932) ("A taking within the meaning of the amendment must have been an intentional appropriation of the property to the public use.").

Thus, an analysis similar to that applied above controls the determination of whether Plaintiffs' claim sounds in tort, and as a result, whether this Court lacks jurisdiction to consider it. In Thune, the court dismissed the complaint due to a lack of subject matter jurisdiction

because "[a] claim for damages resulting from the government's faulty, negligent or improper implementation of an authorized project sounds in tort." 41 Fed. Cl. at 52.

In granting the government's motion to dismiss for lack of subject matter jurisdiction, the Court held that there was no evidence that the government intended to take the plaintiff's property. See id. at 53. According to the court, since "there is no basis for inferring that the government should have anticipated that wind changes would blow the fire out of control," the "destruction was not a direct, natural, and probable consequence of the project functioning as designed." Id. at 53, 54 (emphasis added). Accordingly, destruction of plaintiff's property was not a direct consequence of any authorized government act and, therefore, no intent to take plaintiff's property could be inferred. Id. at 52.

Again, it should be noted that the government acts about which Plaintiffs complain are the Forest Service's former policy of extinguishing all forest fires, and the Forest Service's existing policy of allowing the public to use and enjoy public land. Complaint at ¶¶39-50. Because Plaintiffs cannot prove that the damage to their property was a "direct, natural, and probable consequence" of these policies, they cannot prove that the Government intended to take their property. Even if these policies accidentally, or even negligently, contributed to damaging Plaintiffs' property, Plaintiffs' claim is "not a taking, but, at most, a tort." Teegarden, 42 Fed. Cl. at 256. Because this Court lacks jurisdiction to consider claims sounding in tort, Plaintiffs' complaint must be dismissed.

## III. CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court grant its motion for judgment on the pleadings and dismiss Plaintiffs' Complaint in its entirety.

Respectfully Submitted,

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

s/Heide L. Herrmann____________________
HEIDE L. HERRMANN
Environment and Natural Resources Division
Natural Resources Section
Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
202-305-3315 (phone)
202-305-0274 (fax)
Heide.Herrmann@usdoj.gov

Dated: April 20, 2007

# APPENDIX

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| RICHARD CARY, et al., Plaintiffs, | ) |
| v. | ) Docket No.: 06-707L |
| UNITED STATES, Defendant. | ) |

Courtroom 7
National Courts Building
717 Madison Place NW
Washington, D.C.

Tuesday,
March 27, 2007

The parties met, pursuant to notice of the Court, at 2:35 p.m.

BEFORE: HONORABLE JOHN P. WIESE
Judge

APPEARANCES:

For the Plaintiffs: (Via Telephone)

MARK S. GROTEFELD, Esquire
Grotefeld & Denenberg
105 West Adams Street, Suite 2300
Chicago, Illinois 60603
(312) 601-2398

For the Defendant:

HEIDI L. HERRMANN, Esquire
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-3315

authorities that I'm sure Ms. Herrmann has in front of her right now and is ready to introduce by way of a motion?

Is there anything that we are missing that we need to know about?

MR. GROTEFELD: Well, first of all, Your Honor, thank you for your preliminary thoughts about what the case may be and about some cases that may have some bearing on the facts and circumstances involved.

However, I don't believe that I have yet to see a motion by Ms. Herrmann, and I believe she was going to get one filed before the 4th.

THE COURT: Yes. Yes.

MR. GROTEFELD: I do welcome that because I also welcome an opportunity to discuss at great length or -- let's put it this way -- needed length the differences between the cases that Your Honor has just discussed and which I believe Ms. Herrmann will rely upon for purposes of introducing her motion.

Yes, I do believe both Thune and Teegarden are very distinguishable on the facts. Those are both fire protection cases. Those are not fire prevention cases, and the law draws a very distinct and significant line between the two.

In both Teegarden and Thune we are dealing with issues relating to fire protection services. That is not the crux of the case that we have filed in the United States Court of Federal Claims. We are talking about fire prevention issues.

While the Court may have some preliminary thoughts as to the issue of foreseeability, I believe the facts in this case will bear out that not only was fire possible; it was imminently foreseeable and that actions were taken historically by the government to keep people out of this particular forest under less severe circumstances because of not just the possibility of fire, but the significant probability of what would happen in the event of any type of fire.

Be it lightning, be it a foolish man who didn't know what to do with setting a signal fire, be it any kind of circumstance that if fire would begin in Cleveland National Forest during certain times of the year and under certain fire conditions it was not only possible; it was absolutely foreseeable that it would spread to the adjoining lands of the forest.

We welcome the opportunity to bring those issues factually before the Court and to show how they, quite frankly, distinguish this matter entirely from the cases that are being cited here.