# APPENDIX

ORIGINAL

Pamela J. Gelman (SBN 105674)
GROTEFELD & DENENBERG, L.L.P.
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067
Telephone: (310) 356.4683
Facsimile: (310) 772-0631

Maura Walsh Ochoa (SBN 193799)
Shoba Dandillaya (SBN 212829)
Todd C. Harshman (SBN 240942)
GROTEFELD & DENENBERG, L.L.P.
100 Spear Street, Suite 310
San Francisco, California 94105
Telephone: (415) 344-9670
Facsimile: (415) 989-2802

Attorneys for Plaintiffs

FILED
OCT 20 2006
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD AND SUSAN CARY, PATRICIA GEERTS, SHARON HENRY, JAMES HERZOG, DIANE KNUEFFER, PATRICIA MARTIN, ROBERT S. MARTIN, JANET MARIE PRIATT, DONA SCHNEIDER, DOUGLAS SCHWAEBE, CARL AND KATHERINE SCHWEIKERT, DAVID SOUTHCOTT, and MARY CAROL WILDER, on behalf of themselves and all others similarly situated, who sustained damage to a property interest as a result of the Cedar Fire.<br>Plaintiffs,<br>vs.<br>THE UNITED STATES,<br>Defendant. | Docket No. 06CV 2342 DMS LSP<br>FILE BY FAX<br><br>**CLASS ACTION COMPLAINT FOR PROPERTY DAMAGE** |

Plaintiffs, RICHARD AND SUSAN CARY, PATRICIA GEERTS, SHARON HENRY, JAMES HERZOG, DIANE KNUEFFER, PATRICIA MARTIN, ROBERT S. MARTIN, JANET MARIE PRIATT, DONA SCHNEIDER, DOUGLAS SCHWAEBE, CARL AND KATHERINE SCHWEIKERT, DAVID SOUTHCOTT, and MARY CAROL WILDER (hereinafter referred to as the "NAMED PLAINTIFFS"), on behalf of themselves and all others

similarly situated (hereinafter referred to collectively as "PLAINTIFFS"), by their attorneys, GROTEFELD & DENENBERG, L.L.P., sue Defendant, THE UNITED STATES (hereinafter referred to as the "DEFENDANT"). As grounds for their complaint, PLAINTIFFS state as follows based upon information and belief:

**INTRODUCTION**

1. This lawsuit, stemming from the Cedar Fire of October 2003 (hereinafter referred to as the "Cedar Fire"), seeks redress for PLAINTIFFS whose property interests were damaged and/or destroyed during this catastrophic event.

2. This case encompasses valid ongoing concerns related to public safety and the welfare of property interests held by citizens in and about San Diego County, California as those interests are adversely affected by DEFENDANT'S management and control of its lands, including the public lands commonly known as the Cleveland National Forest (hereinafter "CNF").

3. This lawsuit calls into question the actions taken by or on behalf of DEFENDANT that were tantamount to malfeasance with regard to forest management, fire prevention, fire protection and public recreational use within the CNF. DEFENDANT'S acts and/or omissions needlessly caused a highly dangerous fire scenario to remain within the CNF before the outbreak of the Cedar Fire and by abandoning this fire at its controllable, incipient stage, DEFENDANT facilitated the Cedar Fire's development into an epic conflagration that spread well beyond the boundaries of the CNF, placing homes, property and lives in and about San Diego County in harm's way.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the subject matter of this controversy pursuant to 28 U.S.C. §1346(b)(1), which governs civil actions for claims against the United States for money damages for injury to or loss of property.

5. This Court also has personal jurisdiction over DEFENDANT pursuant to 28 U.S.C. §1346(b)(1).

6. PLAINTIFFS were and are at all times mentioned herein citizens of the United States.

7. PLAINTIFFS have complied with the Federal Tort Claims Act (28 U.S.C. §2671 et seq.; hereinafter referred to as the "FTCA") by submitting claims to the United States Department of Agriculture on October 20 and 21, 2005.

8. This Court has jurisdiction over the subject matter of this controversy as the DEFENDANT failed to make a final disposition of the aforementioned claims by April 21, 2006 as prescribed by 28 U.S.C. §2675(a).

9. This matter has been timely filed pursuant to 28 U.S.C. §§ 2401(b) and 2675(a).

10. Venue is appropriate in this judicial district under 28 U.S.C. §1402(b) as this is the district where the PLAINTIFFS' real and/or personal property interests were damaged and where the vast majority of the PLAINTIFFS reside.

**PARTIES**

11. At all relevant times herein, Plaintiffs Richard and Susan Cary owned real and personal property located at 16725 Harrison Park Trail, Julian, California that was damaged and/or destroyed in the Cedar Fire.

12. At all relevant times herein, Plaintiff Diane Knueffer owned real and personal property located at 30 Twin Oaks Road, Julian, California that was damaged and/or destroyed in the Cedar Fire.

13. At all relevant times herein, Plaintiffs Carl and Katherine Schweikert owned real and personal property located at 16952 Iron Springs Road, Julian, California that was damaged and/or destroyed in the Cedar Fire.

14. At all relevant times herein, Plaintiff David Southcott owned real and personal property located at 17264 Iron Springs Road, Julian, California that was damaged and/or destroyed in the Cedar Fire.

15. At all relevant times herein, Plaintiff James Herzog owned real and personal property located at 30 Twin Oaks Road, Julian, California that was damaged and/or destroyed in the Cedar Fire.

16. At all relevant times herein, Plaintiff Patricia Geerts owned real and personal property

located at 14805 Mussey Grade Road, Ramona, California that was damaged and/or destroyed in the Cedar Fire.

17. At all relevant times herein, Plaintiff Janet Marie Priaatt owned real and personal property located at 13835 Fernbrook Drive, Ramona, California that was damaged and/or destroyed in the Cedar Fire.

18. At all relevant times herein, Plaintiff Sharon Henry owned real and personal property located at 1383 Fernbrook Drive, Ramona, California that was damaged and/or destroyed in the Cedar Fire.

19. At all relevant times herein, Plaintiff Dona Schneider owned real and personal property located at 14062 Fernbrook Drive, Ramona, California that was damaged and/or destroyed in the Cedar Fire.

20. At all relevant times herein, Plaintiff Mary Carol Wilder owned real and personal property located at 14110 Fernbrook Drive, Ramona, California that was damaged and/or destroyed in the Cedar Fire.

21. At all relevant times herein, Plaintiff Douglas Schwaebe owned real and personal property located at 13150 Genesis Way, Lakeside, California that was damaged and/or destroyed in the Cedar Fire.

22. At all relevant times herein, Plaintiff Robert S. Martin owned real and personal located at Assessor's Parcel Numbers: 1) 294-160-22-00; 2) 294-160-26-00; 3) 293-180-30-00; 4) 293-180-34-00; 5) 293-180-58-00; 6) 293-180-59-00; 7) 293-180-60-00; 8) 293-180-63-00; and 9) 293-180-64-00, North Peak, Cuyamaca, Julian, California that was damaged and/or destroyed in the Cedar Fire.

23. At all relevant times herein, Plaintiff Patricia Martin owned real and personal property located at Assessors Parcel Number: 294-160-23-00, North Peak, Cuyamaca, Julian, California that was damaged and/or destroyed in the Cedar Fire.

24. At all relevant times and as though fully set forth herein, other persons similarly situated owned real and/or personal property at locations described in Exhibit "1" to this Complaint that was damaged and/or destroyed in the Cedar Fire.

25. PLAINTIFFS are informed and believe that at all pertinent times herein, DEFENDANT, d/b/a/ the United States Department of Agriculture (hereinafter referred to as "USDA"), the USDA Forest Service (hereinafter referred to as the "USFS"), and/or other public entities duly organized and existing under and by virtue of the laws of the United States, owned and was in control of the CNF.

## CLASS ALLEGATIONS

26. This action is brought in accordance with Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

27. The class consists of persons who owned property located in and around the County of San Diego whose real and/or personal property was damaged and/or destroyed as a result of the Cedar Fire (hereinafter referred to as the "CLASS").

28. The CLASS is so numerous that joinder of all members individually is impracticable. Attached to this Complaint as Exhibit "1" and incorporated as though fully set forth herein is a list of addresses showing properties where the County of San Diego has indicated damage and/or destruction of a property interest due to the events of the Cedar Fire. Though Plaintiffs are informed and believe that the CLASS includes thousands of persons, as the Cedar Fire affected over 2,000 residences, the CLASS is nonetheless manageable as there is a record of damaged and destroyed properties.

29. The questions of law and fact at issue in this controversy are common to the CLASS. The same negligent acts and/or omissions committed by DEFENDANT are common to all members of the CLASS. DEFENDANT'S negligent failure to prevent, control or suppress the Cedar Fire started on its lands, as well as DEFENDANT'S resulting trespass to private property, led to the damages to the property interests of all potential CLASS members.

30. The questions of law or fact common to the CLASS predominate over questions of law and fact which affect only individual members of the CLASS. The common core of salient facts (the acts and/or omissions of the DEFENDANT alleged herein) applies to the injuries sustained by all individual members of the CLASS. The individual claims will differ only in the amount of

damages and the nature of the property interest impaired. If beneficial or necessary for judicial economy, subclasses may be formulated reflecting the specific types of damages suffered by CLASS members.

31. The claims of the NAMED PLAINTIFFS are typical of the claims of the CLASS. All claims, whether by NAMED PLAINTIFFS or members of the CLASS, stem from injury to property interests caused by the same acts and/or omissions of the DEFENDANT. Although some individuals comprising the claimant CLASS will not have sustained one or several of the types of damages suffered by the NAMED PLAINTIFFS (for example renters will not have suffered damage to land), the converse is not true.

32. Many members of the CLASS who did not sustain extensive property damage (e.g., renters) would most likely not pursue a claim if a class action were not available due to the burden and expense of litigation.

33. The NAMED PLAINTIFFS are able fairly and adequately to protect the interests of all members of the CLASS, since the NAMED PLAINTIFFS have interests in this action which are coincident with, and not adverse to, the CLASS they represent, and since the NAMED PLAINTIFFS individually have a substantial financial interest in this action. The NAMED PLAINTIFFS are members of the CLASS.

34. The NAMED PLAINTIFFS have employed attorneys experienced and competent in representing numerous plaintiffs in the prosecution of complex property damage claims, including wildfire related mass torts.

35. On balance, a class action is superior to other methods available for adjudicating the controversy. By maintaining this action as a class action, individual CLASS members who have claims which might not otherwise warrant individual actions are provided with an accessible forum for redress of their claims, and the possibility of repetitious litigation will be eliminated. Individual litigation of the claims of all CLASS members is impracticable. By contrast, the conduct of this action as a class action with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system, prevents inconsistent results, and protects the rights of each CLASS member.

## FACTS COMMON TO ALL COUNTS

**The Cleveland National Forest**

36. The CNF consists of 460,000 acres of varying terrain and is the southernmost National Forest in the State of California. It is located just north of Mexico and east of the City of San Diego. The forest is located within the biodiversity hotspot known as the California Floristic Province.

37. The CNF's western boundary varies in distance along its length from 10 to 30 miles from the Pacific coast. The forest extends from within 5 miles of the Mexican border northward approximately 130 miles to Orange and Riverside counties.

38. The CNF borders San Diego's greater metropolitan area and abuts various municipalities and townships, including the communities of Julian, Ramona, Harrison Park and Alpine.

39. At all relevant times, public access to the CNF was the responsibility of, under the control of, and managed by DEFENDANT.

40. At all relevant times, DEFENDANT was responsible for and in fact controlled forest and other vegetation management within the CNF.

41. At all relevant times, DEFENDANT was responsible for the modeling of prospective fires within the CNF.

42. At all relevant times, DEFENDANT was responsible for emergency response planning, including search and rescue and fire, within the CNF.

43. At all relevant times, DEFENDANT was responsible for general fire prevention as well as fire suppression activities within the CNF.

44. At all relevant times, the California Department of Forestry (hereinafter referred to as the "CDF"), acted under the authority of DEFENDANT with respect to any and all fire prevention and fire suppression activities occurring within the CNF.

45. At all relevant times, the CNF's wilderness area was designated as an "Extreme" Fire Danger Zone by the USFS and the State of California. This designation, based in part upon predicted seasonal weather conditions and the dangerous fire hazards posed by the vegetative

conditions then existing in the CNF, made known to DEFENDANT the danger of the outbreak of even the smallest fire within the CNF growing out of control if not extinguished at its outset.

46. The years between 1998 and 2003 were unusually dry in Southern California. In addition to experiencing an unusually warm autumn, rainfall in 2003 was ranked in the bottom of the 5th percentile for the previous 108-year period. Humidity was also extremely low, persistently measuring less than 10%.

47. In late October, 2003 the critical and imminent threat of fire was underscored by the fact that several National Fire Danger Rating System indices for the area (taken at the CNF's Descanso Weather Station) reached the following record levels:

a. The "Burning Index" set a new historical maximum;

b. The "Energy Release Component" set a new record high; and

c. The "1000-Hour Dead Fuel Moisture Level" tied its historical driest level.

48. The extreme fire danger was further emphasized by the fact that between October 21 and 25, 2003, no fewer than five (5) fires in San Bernardino, Los Angeles, and Ventura Counties had already burned almost 150,000 acres, and required the commitment of 6,305 firefighters, 535 engine companies, 196 hand crews, 37 helicopters, 66 bulldozers, 70 water tenders, and 784 overhead personnel.

49. On and before October 25, 2003 DEFENDANT was aware that firefighting resources from San Diego County had already been depleted as they had been deployed to the Roblar 2 Fire that began on October 21, 2003.

50. Well before October 25, 2003 DEFENDANT caused to be prepared computer fire models for use in its management of the CNF. These models factored in weather, terrain, vegetation conditions, time of day, and other pertinent data so as to educate DEFENDANT concerning probable and predictable fire scenarios (path of fire, rate of progress, prospective damage, etc.) in the event of an outbreak of fire in virtually any portion of the CNF. DEFENDANT had been informed of the results of the fire modeling months before the outbreak of the Cedar Fire.

51. DEFENDANT knew or should have known of the highly dangerous fire hazard conditions in or about the CNF which existed for a period of years before the outbreak of the

Cedar Fire, precipitated by fuel loads that existed within the CNF and the increased development of communities abutting the CNF, as well as other factors discussed herein.

52. DEFENDANT also knew of more recently observed hazards that contributed to the extreme fire conditions that existed within the CNF before the Cedar Fire, including, but not limited to, the predicted weather conditions for the days preceding and following October 25, 2003.

53. DEFENDANT knew or should have known before the outbreak of the Cedar Fire that in all probability the above described extreme fire conditions would lead to a conflagration in the event that reasonable steps were not taken to minimize the risk of fire in the CNF and, in the event of a fire, reasonable steps were not taken to suppress it in its nascency.

**The Cedar Fire**

54. On October 25, 2003, DEFENDANT permitted members of the general public recreational access to remote areas of the CNF for the purpose of hunting deer. At approximately 3:30 p.m. that day, one member of a hunting party made a 911 emergency call from a cellular phone to initiate search and rescue for a lost member of their party. This separated member, Sergio Martinez, was presumed lost and possibly in need of medical attention.

55. At approximately 4:00 p.m. on October 25, 2003, through coordinated efforts with DEFENDANT, San Diego County Sheriffs met up with the hunters in the CNF and commenced search and rescue efforts to find Mr. Martinez.

56. At approximately 5:00 p.m. on October 25, 2003, two of the hunters participating in the search walked over a rise situated within the CNF and spotted smoke. They continued to walk approximately five minutes in the direction of the smoke until they spotted what they described as being a small, lineal fire. At that time, the fire was only 50 to 60 yards in length and was moving at a very slow pace. According to an eyewitness, no measurable wind existed at this time, and skies were clear and sunny.

///

57. One hunter immediately called 911 on his cellular phone to report the fire, and the other called out Sergio Martinez's name. A gunshot was heard on the opposite side of the small fire line in response to calls for Sergio Martinez.

58. Within a few minutes, the San Diego County Sheriffs assisting in the search within the CNF were informed of both the existence of the fire and of Mr. Martinez's location. They, in turn, provided ground spotting and radioed coordinates to a San Diego County Sheriff Department's helicopter involved in the search and rescue efforts.

59. At approximately 5:30 p.m. on October 25, 2003, both San Diego County Sheriffs and hunters involved in the search and rescue efforts walked the short distance from their position on a rise to the fire's location and witnessed the helicopter airlift of Mr. Martinez from the CNF. The clearly visible fire was still small in size and was not moving at any measurable pace. The wind remained calm and skies were still clear and sunny.

60. After the helicopter air rescue had been completed, the San Diego County Sheriffs and the hunters assisting in the search turned around and walked from the fire across stable and flat terrain approximately 200 yards to where their vehicles were located.

61. As the sheriffs and the hunters arrived at their vehicles, several USFS and CDF fire trucks arrived on the scene.

62. Rather than inquiring about the fire, a firefighting official instead asked the hunters if anyone had a license to hunt doe, as he had spotted doe along the road as he traveled to the fire scene.

63. At no time while on scene did any firefighting personnel, including any fire official, walk to the fire line to investigate the fire, nor did they inquire of the hunters what they had witnessed at the fire line.

64. Although three fire trucks along with a command vehicle were present at the fire's point of origin, and although the fire still remained small in size and was not moving at any measurable pace, not one firefighter left their vehicle and no order was given to put out this small signal fire situated within the CNF.

///

65. After remaining on scene for only a matter of minutes, the fire personnel abandoned this small signal fire and left no personnel to remain at the fire's point of origin either to attend to the fire or to monitor the fire's progress. At this time, winds remained calm and the sky was still clear and sunny.

66. After the firefighting personnel abandoned the fire, one of the remaining hunters had a conversation with one of the San Diego County Sheriffs at the scene. The hunter asked why fire personnel made no effort to put out the fire given that the fire was controllable in size and easily accessible by foot or vehicle. The San Diego County Sheriff informed the hunter that fire personnel claimed that there was nothing there to burn and said that they would monitor the fire's progress.

67. As no USFS or CDF firefighting personnel remained at the fire's location, and the San Diego County Sheriffs indicated that they were about to leave, the two remaining hunters left the scene as well.

68. Upon sighting Mr. Martinez and the fire, the aforementioned San Diego County helicopter immediately radioed for assistance from an additional en route San Diego County helicopter possessing firefighting apparatus. The request was for the second helicopter to come to the fire's point of origin and drop water on the fire.

69. Although the second San Diego County helicopter had a full load of water and there was enough remaining daylight for several additional water drops, personnel under DEFENDANT'S authority pursuant to an interagency agreement ordered it to disengage firefighting activities.

70. Situated roughly five miles from the fire's point of origin was the Ramona Air Attack Base, operated by the USFS and the CDF. At all pertinent times, standard protocol required 911 personnel to alert the Ramona Air Attack Base when they are first notified of such a fire. Despite this notification, the spotter plane, several fixed wing airplanes, and/or air tankers specifically designated to provide air attack upon a fire of this nature sat and remained idle at the Ramona Air Attack Base for the remainder of the daylight hours on October 25, 2003.

71. Representatives of the CDF and other agencies have publicly stated that if these airplanes and/or tankers were deployed, they not only would have been over the fire scene within eight (8)

minutes but also had the capability of providing enough chemical fire retardant to have eliminated the fire altogether. At very least, the aircraft would have kept the fire suitably controlled and contained within public land so as to permit further attack and fire suppression by firefighters on the ground.

**The Aftermath**

72. Over the course of five (5) days, the small signal fire that was abandoned by DEFENDANT in the CNF spread to surrounding properties and became what has been determined to be the largest fire in California history. The Cedar Fire burned more than 273,000 acres, 2,232 residences, 22 commercial structures, 566 outbuildings and took the lives of fourteen (14) civilians and one (1) firefighter.

73. Local, State and Federal governmental agencies have determined that as a result of the Cedar Fire, the monetary losses suffered by owners of property situated in and around the County of San Diego, including the property noted in Exhibit "1" to this Complaint, exceed Two Hundred Million Dollars ($200,000,000.00).

## STATUTE RELEVANT TO ALL COUNTS

74. Under the Federal Tort Claims Act, DEFENDANT'S liability for the consequences of its negligent acts and/or omissions in and around the CNF is determined by whether a private individual would be responsible for similar negligence under California law. 28 U.S.C. §2674, states, in pertinent part,

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

///

///

///

///

**COUNT 1 – NEGLIGENCT FIRE SUPPRESSION BY DEFENDANT**

75. PLAINTIFFS hereby incorporate by reference, as though fully set forth herein, paragraphs 1 to 74.

76. DEFENDANT'S general duty owed to PLAINTIFFS under the common law is codified generally by California Civil Code §1714(a), which states, in pertinent part,

> Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.

77. DEFENDANT'S specific duty owed to PLAINTIFFS under the common law is codified specifically by California Health and Safety Code §13008, which states,

> Any person who allows any fire burning upon his property to escape to the property of another, whether privately or publicly owned, without exercising due diligence to control such fire, is liable to the owner of such property for the damages to the property caused by the fire.

78. DEFENDANT breached its duty owed to PLAINTIFFS by failing to exercise due diligence to suppress and/or control the Cedar Fire in its infancy. By abandoning firefighting efforts when the small signal fire was controllable and/or by failing to dispatch appropriate fire fighting resources, DEFENDANT breached its duty of care, causing the fire's escape from the CNF to PLAINTIFFS' properties.

79. DEFENDANT had sufficient time prior to the fire's spread from within the boundaries of the CNF to have taken reasonable steps to prevent the spread of the Cedar Fire from lands under its control.

80. The spread of the Cedar Fire to PLAINTIFFS' properties in and around San Diego County and the resulting damage from the fire's spread was an eminently foreseeable result of DEFENDANT'S failure to use diligence in suppressing the Cedar Fire at its genesis. The extreme fire hazard conditions alleged herein indicated that this fire would grow exponentially if firefighting efforts were abandoned at the fire's initial stages.

///

///

81. DEFENDANT'S negligent acts and/or omissions concerning fire suppression in the CNF at the incipient stage of the Cedar Fire were a substantial factor in causing the PLAINTIFFS' damages.

82. As a result of DEFENDANT'S negligent fire suppression efforts within the CNF at the onset of the Cedar Fire during the late afternoon hours of October 25, 2003, PLAINTIFFS suffered the damages complained of herein.

**COUNT 2 – PER SE NEGLIGENT FIRE SUPPRESSION BY DEFENDANT**

83. PLAINTIFFS hereby incorporate by reference, as though fully set forth herein, paragraphs 1 to 82.

84. California Public Resources Code §4422, designed to prevent injury as a result of allowing fire to spread, uncontrolled, to the property of another states:

> A person shall not do any of the following:
> (a) Willfully or knowingly allow fire to burn uncontrolled on land which he owns or controls, or to escape to the lands of any person other than that of the owner.
> (b) Allow any fire kindled or attended by him to escape from his control or to spread to the land of any person other than from the land from which the fire originated.

85. California Public Resources Code §4104, in defining the term "uncontrolled fire," states:

> The term "uncontrolled fire," as used in this division, means any fire which threatens to destroy life, property, or resources and either: (1) is unattended by any person; (2) is attended by persons unable to prevent its unrestricted spread; or (3) is burning with such velocity or intensity that it could not be readily controlled with those ordinary tools available to private persons at the fire scene.

86. From its onset the Cedar Fire threatened to destroy life, property, and resources because of the extreme fire hazard conditions alleged herein.

87. Beginning at the time that DEFENDANT was first notified by citizens of the fire's existence, there was a complete disregard and lack of coordination by DEFENDANT in organizing, dispatching, and/or controlling appropriate firefighting efforts within the CNF at the Cedar Fire's incipient stage.

///

88. By abandoning the Cedar Fire at its initial stages, DEFENDANT left this fire effectively uncontrolled. By the time fire suppression efforts were undertaken, DEFENDANT was unable to confine the Cedar Fire's spread to land owned by others. The Cedar Fire was then burning with such intensity that it could not be controlled by DEFENDANT.

89. As a result of abandoning the Cedar Fire in its infancy and failing to further deploy appropriate fire suppression personnel until such time as the Cedar Fire was uncontrollable,

a. DEFENDANT willfully and/or knowingly allowed the Cedar Fire to burn uncontrolled in the CNF, in violation of California Public Resources Code §4422(a);

b. DEFENDANT willfully and/or knowingly allowed the Cedar Fire to escape to the private property of adjacent landowners, in violation of California Public Resources Code §4422(a);

c. DEFENDANT allowed a fire attended by it to escape from its control, in violation of California Public Resources Code §4422(b); and

d. DEFENDANT allowed a fire attended by it to spread from the CNF to the land of adjacent property owners, in violation of California Public Resources Code §4422(b).

90. DEFENDANT'S violation of California Public Resources Code §4422 was a direct and legal cause of NAMED PLAINTIFFS' and PLAINTIFFS' injuries as alleged herein.

91. PLAINTIFFS' damages resulted from DEFENDANT allowing the Cedar Fire to spread, uncontrolled, to their property, the occurrence of which California Public Resources Code §4422 specifically prohibits.

92. PLAINTIFFS are of the class of persons for whose protection California Public Resources Code §4422 was adopted. They were all owners of real or personal property located in California that sustained damage due to the Cedar Fire's uncontrolled spread from the CNF to their land or personalty.

93. DEFENDANT'S violation of California Public Resources Code §4422 was at the very least a substantial factor in causing PLAINTIFFS' damages.

///

///

**COUNT 3 – NEGLIGENCE (PREMISES LIABILITY) AGAINST DEFENDANT**

94. PLAINTIFFS hereby incorporate by reference, as though fully set forth herein, paragraphs 1 to 93.

95. At all relevant times, DEFENDANT had a duty to use and operate its property so as not to injure or damage property rights and interests of other persons. This duty included the obligation to use due care to eliminate known dangerous conditions located on property under DEFENDANT'S control.

96. DEFENDANT'S general duty owed to PLAINTIFFS under the common law is codified by California Civil Code §1714(a), which states, in pertinent part;

> Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.

97. DEFENDANT breached the aforementioned duty by permitting the public's general recreational use of the CNF, including the specific use by the aforementioned hunters, despite critical fire hazard conditions existing within the CNF on or about October 25, 2003.

98. DEFENDANT had actual or constructive notice of the existence of predicted and actual critical fire hazard conditions within the CNF before opening the CNF for public recreational use on the morning of October 25, 2003.

99. Several of these factors, known to DEFENDANT for years prior to the outbreak of the Cedar Fire, required DEFENDANT to take reasonable measures to protect NAMED PLAINTIFFS and PLAINTIFFS from the outbreak and spread of fire in public lands under its control.

100. Critical Fire Danger Levels existed within the CNF on and around October 25, 2003, as evidence by low fuel moisture, local fire activity, depletion of local fire personnel, equipment and resources, and the predicted seasonal Santa Ana conditions.

///

///

///

101. Under these circumstances, DEFENDANT did not have discretion to maintain its property in a dangerous condition. In order to provide for public safety and to protect neighboring property, DEFENDANT was mandated to close the CNF to the public whose recreational use of the CNF could foreseeably increase the risk of fire occurring.

102. Upon information and belief, the DEFENDANT closed the CNF to the public in previous years under less critical fire conditions than those that existed on October 25, 2003.

103. The damage to NAMED PLAINTIFFS' and PLAINTIFFS' property interests as complained of herein was the foreseeable result of and was caused by DEFENDANT'S failure to use due care to eliminate the dangerous conditions extant in the CNF on or about October 25, 2003 and to mitigate the threat of fire to adjacent properties by closing the CNF to hunters and other like recreational users.

104. DEFENDANT'S negligent acts and/or omissions regarding the dangerous public recreational use of its lands in the CNF were at the very least a substantial factor in causing PLAINTIFFS' damages.

## COUNT 4 – TRESPASS AGAINST DEFENDANT

105. PLAINTIFFS hereby incorporate by reference, as though fully set forth herein, paragraphs 1 to 104.

106. PLAINTIFFS owned, leased and/or controlled real property located adjacent to the CNF.

107. DEFENDANT'S acts caused the Cedar Fire to enter PLAINTIFFS' properties.

108. PLAINTIFFS did not grant permission for the DEFENDANT to cause the Cedar Fire to enter their properties.

109. DEFENDANT'S acts in allowing the Cedar Fire to enter PLAINTIFFS' properties was a substantial factor in causing the damages alleged herein.

110. The unauthorized invasion of the Cedar Fire onto PLAINTIFFS' properties caused the damages and actual harm alleged herein.

///

///

Case 3:06-cv-02342-DMS-LSP Document 1 Filed 10/20/2006 Page 18 of 97

WHEREFORE, PLAINTIFFS respectfully request this Honorable Court enter a judgment against Defendant, THE UNITED STATES, in an amount of Two Hundred Thirty Six Million, Eight Hundred Ninety Thousand, Six Hundred Forty Eight Dollars ($236,890,648.00) for destruction and/or damage to property, plus interest, costs, and attorneys' fees pursuant to 28 U.S.C. §2412, and as otherwise accorded by law.

Dated this 19th day of October, 2006

**GROTEFELD & DENENBERG, L.L.P.**

PAMELA GELMAN
Attorneys for Plaintiffs

SF#13349